Proceed to the next case. Daniel's Home Furnishings v. The Workers' Compensation Commission, 4090659. Counselor, please. Thank you, Your Honor. May I please look forward to those? My name is Derek Schroen. I represent Daniel's Home Furnishings. There are two issues before the Court today, and both of those issues involve questions of fact. The first issue is whether the Petitioner met his burden of proof to establish that he was entitled to TTD for the period that he was awarded. TTD was actually awarded July 12, 2006 through June 10, 2008. That was upheld by the Commission 2-1 and also upheld by a certain court. The Petitioner offered no medical evidence to support a finding that the Petitioner was unable to work after March 14, 2007. The Respondent agrees that TTD from July 12, 2006 to March 14, 2007 was correctly paid. The Petitioner saw Dr. Atwater on November 21, 2006. The records of Dr. Atwater from that day are silent on the issue of the Petitioner's ability to work. The Petitioner was also seen by Dr. Oakey, his shoulder orthopedic doctor, and was released without restrictions on March 14, 2007. At arbitration, the Petitioner did not offer any evidence of subsequent doctor visits to indicate he was unable to work because of his work accident. In fact, Dr. Atwater was deposed on January 23, 2008. He confirmed at that point that he had not seen the Petitioner in over 14 months. He was actually shown a work restriction slip that day from a partner in his medical practice, Dr. Carmichael, dated August 31, 2007. That slip said the Petitioner could work with some restrictions, but there was no medical attached to that work slip showing what it was related to or whether he was even seen on or about August 31, 2007. By the time this case... Counsel, the Commission adopted the opinions of Drs. Carmichael and Atwater in determining that the claimant remained temporarily and totally disabled as of the date of the arbitration hearing. Is that correct? That's correct. On what basis, then, do we decide that that finding is not supported by the record? I looked at the Henrichs case, which basically that case would hold that Dr. Atwater's opinions were not present opinions based upon a recent examination, because it had been so long since Dr. Atwater had seen the Petitioner by the time he testified at his deposition in January of 2008. Is it a code of admissibility or wait? I believe that would go to wait. Based on the Henrichs case, it's my understanding that that case would hold that Dr. Atwater's opinions were unreliable and it would be improper to consider them. Basically, a present opinion based on an examination conducted in this case 14 months before his deposition would not be reliable and should be rejected. What about Carmichael? How do we discount that? I don't think there's any way around Carmichael's opinion. I would also point out the dissent that was written by Commissioner Lindsey when this case did appear before the Commission. Basically, the claimant should not be allowed to sit by and collect additional temporary total disability benefits when that person hasn't been examined by a doctor in over 14 months. Again, I would say with respect to the August 31st off-work slip that basically gave the Petitioner certain restrictions, there was never any corresponding office note introduced by the Petitioner to explain the basis or the purpose of that slip. Respondent would say that it's against the manifest way of the evidence and there's no evidence to support any award of TTD beyond March 14, 2007. The second issue that we presented for you today would be regarding the cervical complaints that the Petitioner had. As you're aware, the Petitioner fell off of a ladder on May 30, 2006. He did testify at arbitration on June 10, 2008 that he fell on his back and his neck, but the initial injury report and initial medical records don't support that testimony. He didn't have any immediate medical treatment following the accident. He continued to work full duty for two weeks after he fell off that ladder. And when he did seek treatment initially, it was only for hand, arm and shoulder problems. The initial records indicate that he fell on his hand and his wrist and he jammed his shoulder. In fact, the Petitioner filled out a pain chart at St. Joseph's Medical Center and on that chart he specifically complained only of shoulder and low back pain, nothing with his neck. He saw Dr. Oakey for the first time on June 15, 2006. At that visit he complained of falling from the ladder and said he injured his right wrist and elbow and jammed his shoulder. He did not complain of any neck pain. The Petitioner basically failed to explain the contradiction between his initial histories and the records and what he actually testified to at arbitration. In fact, the first time he ever complained of any neck pain was with Dr. Carmichael and that was about two months after the work accident. And even at that point the Petitioner didn't specifically link the neck pain to the work accident. An MRI of his cervical spine was done in August 2006 and that did not show any herniated discs in the cervical spine. Was the Petitioner, did he make that link or can it be made by the medical testimony in the record? It could be made by the medical testimony, but again, as before, the opinion that was relied on here was Dr. Atwater's opinion. And as before, I'm going to make the same argument I did in the Henry's case and say basically that Atwater hadn't seen him for 14 months by the time he testified and that he should not have been a credible opinion because of that. I'd also say obviously if the medical records are entered and evidence are deemed truthful, so if the Petitioner didn't mention any neck pain in the initial medical records, it can be assumed that he had no neck pain complaints initially. So we would ask that Dr. Atwater's opinions not be found credible and that the cervical problems not be related to the May 30, 2006 work accident and that that decision be reversed. Any other questions? Thank you, Your Honor. Good afternoon, Justices. My name is Christopher Mose, I represent Mr. Troyer. It's frustrating for me to hear the dissent from Commissioner Lindsey raised asserting that the Petitioner was lax in sitting back and allowing him to testify. It's frustrating for me to hear the dissent from Commissioner Lindsey raised asserting that the Petitioner was lax in sitting back and allowing him to testify. This is an argument not raised in Respondent's briefs. I note Mr. Stroman was only involved in the appeal and was not involved in the trial. We are limited to what's on the record, but I can point out that the record shows that if you look at what the Respondent has paid in workers' compensation benefits compared to what it claims Mr. Troyer has owed, you can see that it's paid considerably more in benefits to Mr. Troyer than it claimed was due to the Petitioner. I think you can see that Petitioner obtained the narrative report from Dr. Atwater fairly quickly after benefits were cut off. And then there's a long gap for a deposition of Dr. Atwater and another gap for the deposition of Dr. Ganim. So perhaps you can understand what's going on during these long gaps while we're waiting for the deposition testimony as to why Respondent's paid additional benefits to the Petitioner. So I don't think you can say the Petitioner simply sat back and let TTD accrue. Counsel, how do you respond to your opposing counsel's argument? He seems to be referring to a case that he cites with the proposition that Dr. Atwater's testimony is not credible because he had not seen the Petitioner for 14 months. What's your response to that argument? I have twofold responses. Number one, the reason the Petitioner had not seen Dr. Atwater for 14 months was because of the Respondent. They refused to authorize treatment and the Petitioner testified he had no health insurance. So they've created the situation where they stop him from seeing Dr. Atwater and then they argue, well, hey, you can't pay attention to Dr. Atwater. The second one is fundamentally Dr. Atwater's a spinal surgeon. He believes the Petitioner's got a very serious condition of cervical myelopathy. He finds weakness on his exam findings. The Petitioner is at risk and needs surgery immediately. He's qualified to say under these circumstances, the man couldn't work when I saw him back in November. This condition doesn't improve over time. It gets worse over time. So he still can't work at the present time. And the Commission certainly found that to be credible. And of course, as your Honors know, this is a manifest way of the evidence standard. And the Commission found Dr. Atwater to be credible and did not follow the opinions of Dr. Kinnahan. So I think there's evidence, ample evidence in the record to support the Commission's findings. I alluded earlier to the fact that the Petitioner has a very severe condition in the cervical spine. It's not true that there's no evidence to suggest that he had any initial complaints, that he did not have initial complaints of cervical symptoms. He is referred by, he initially complains of shoulder problems. He's seen by a shoulder doctor who refers him to a spinal expert. It's two months before he sees the spinal expert, but he was certainly referred to the doctor before that. And one can understand the Commission's decision that indicates that there's a causal connection to a man who's doing physical labor before he falls off a ladder. And now it's found to have cervical radiculopathy by EMG. These discs found on the MRI and the CT scan. Based upon all of the evidence, I think there's certainly evidence to support the Commission's finding that there's a causal connection. And also that there's an inability to work and the TPD is justified. Thank you. Thank you, Counsel Revello. Thank you, Counsel. The Court will take the matter under advisement for disposition.